IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARCUS JAMEZ LEWIS,                     §
TDCJ #1955358,                          §
                                        §
         Petitioner,                    §
                                        §
VS.                                     §        CIVIL ACTION NO. 4:18-1049
                                        §
LORIE DAVIS, Director, Texas            §
Department of Criminal Justice,         §
Correctional Institutions Division,     §
                                        §
         Respondent.                    §

## <u>MEMORANDUM AND ORDER</u>

State inmate Marcus Jamez Lewis has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 [Doc. # 1], seeking relief from a conviction for possession of controlled substance that resulted in a sentence of 45 years' imprisonment in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). He has also filed a memorandum of law in support of that petition [Doc. # 2]. The respondent has answered with a motion for summary judgment [Doc. # 12]. Lewis has elected not to reply [Doc. # 17]. After reviewing all of the pleadings, the state court record, and the applicable law, the respondent's motion will be granted and this action will be dismissed for the reasons explained below.

# I. **BACKGROUND**

A grand jury sitting in Harris County, Texas, returned an indictment against Lewis in Cause No. 1398109, charging him with possession of a controlled substance, namely cocaine [Doc. # 13-19, at 13].[1]  The indictment was enhanced for purposes of punishment with allegations that Lewis had at least two prior felony convictions for possession of a controlled substance in 2005, and for possession of a prohibited weapon in 1998 [*Id.*].  As a habitual felon with at least two prior felony convictions, Lewis faced a potential sentence of 25 years to life imprisonment [Doc. # 13-21, at 4].  *See* Tex. Penal Code §12.42(d).

Referring to himself as "Marcus Jamez Lewis© sui juris," Lewis filed a motion to dismiss his court-appointed attorney and requested leave to proceed *pro se* at his upcoming jury trial [Doc. # 13-19, at 47-50].   During a pretrial hearing on September 22, 2014, the 182nd District Court for Harris County advised Lewis both orally and in writing of his right to self-representation under *Faretta v. California*, 422 U.S. 806 (1975) [Doc. # 13-19, at 108-10; Doc. # 13-21, at 4-19]. During that hearing, Lewis refused to recognize the prosecutor, the trial judge, or the trial court's jurisdiction and, after invoking the Uniform Commercial Code ("UCC"), insisted on being called "Paramount Security Interest Holder" as an

---

[1] Unless otherwise indicated, all page numbers for cites to the record reference the pagination inserted on each docket entry by the Court's electronic docketing system, CM/ECF.

"agent" of the sovereign entity known as Marcus Jamez Lewis [Doc. # 13-21, at 4-13, 17]. The trial court denied the motion for leave to proceed *pro se* after finding that Lewis engaged in "confrontational, obstructive" tactics by asserting issues not relevant to the case, adding that his arguments were "utter nonsense," and noting that Lewis had no understanding of the basic rules of evidence [Doc. # 13-19, at 109; Doc. # 13-21, at 7-13].

Lewis continued to engage in disruptive behavior during the trial, causing the trial court to remove him from the courtroom [Doc. # 13-21, at 17-18, 52-55, 8-81; Doc. # 13-22, at 30]. During the guilt/innocence portion of the trial, which Lewis refused to attend [Doc. # 13-22, at 6-11], the State presented testimony from two police officers who arrested Lewis after a traffic stop in which Lewis was found in possession of cocaine [*Id.* at 20-89]. After the jury found Lewis guilty of the charged offense [Doc # 13-3, at 33-36], the trial court determined that the enhancement allegations in the indictment were true and sentenced him to 45 years' imprisonment [Doc. # 13-23, at 55; Doc. # 13-19, at 124].

On direct appeal, Lewis argued that the trial court improperly denied him the constitutional right to represent himself [Doc. # 13-13, at 3]. Lewis raised several other issues, arguing further that he was denied effective assistance of counsel at his trial [*Id.* at 3-5]. After setting out in detail the record of Lewis's disruptive behavior, the intermediate court of appeals concluded in a published opinion that

the trial court did not abuse its discretion by denying Lewis the right to represent himself and that all of his remaining arguments were without merit. *See Lewis v. State*, 532 S.W.3d 423 (Tex. App. – Houston [14th Dist.] 2016) [Doc. # 13-10, at 1-21]. Lewis filed a petition for discretionary review, raising only his claim that the trial court violated his constitutional right to represent himself [Doc. # 13-17, at 2], but the Texas Court of Criminal Appeals summarily refused that petition [Doc. # 13-18, at 1].

Lewis challenged his conviction further by filing an application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure [Doc. # 13-31, at 6-25]. In that application Lewis repeated his claim that the trial court violated his constitutional right to self-representation and argued further that he was denied effective assistance of counsel at his trial [*Id*. at 11-23]. After considering an affidavit from Lewis's defense counsel, the state habeas corpus court entered findings of fact and concluded that his claims were without merit [Doc. # 13-33, at 12-22]. The Texas Court of Criminal Appeals agreed with that recommendation and denied relief without a written order based on the trial court's findings [Doc. # 13-29, at 1].

Lewis now seeks federal habeas corpus relief from his conviction under 28 U.S.C. § 2254, and he asserts the following grounds for relief:

> 1. The trial court erred by denying him the constitutional right to represent himself.

2. He was denied effective assistance of counsel because his trial attorney: (a) had a conflict of interest; (b) failed to investigate; (c) failed to interview potential witnesses; (d) failed to file a motion to suppress the evidence; and (e) failed to object to an improper enhancement sequence in the indictment.

[Doc. # 1, at 6-8].[2] The respondent has filed a motion for summary judgment, arguing that Lewis fails to show that he is entitled to relief under the legal standard that governs federal habeas corpus review [Doc. # 12, at 6-26].

## II. STANDARD OF REVIEW

The record reflects that Lewis's claims for relief were rejected on the merits, either on direct appeal or state habeas corpus review. Thus, his claims are subject to review under the legal standard established by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified at 28 U.S.C. § 2254(d). Under this standard, a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Where a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless

---

[2] The petitioner proceeds *pro se* in this case. Courts are required to liberally construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972); *see also Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction," meaning that their submissions "are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.") (internal citation marks and quotation omitted).

he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (citation omitted). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The AEDPA standard "imposes a 'highly deferential standard for evaluating state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar

relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002). Likewise, a federal habeas corpus court's inquiry is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). Where relief has been denied in summary fashion, a federal habeas corpus court may "look through" that decision to an earlier state court opinion and presume that it provides the relevant rationale for denying relief. *See Thomas v. Vannoy*, 898 F.3d 561, 568 (5th Cir. 2018) (citing *Wilson v. Sellers*, — U.S. —, 138 S Ct. 1188, 1192 (2018)).

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Murphy v.*

*Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)); *see also Garcia v. Quarterman*, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

## III.  <u>DISCUSSION</u>

### A.    **The Right to Self-Representation**

Lewis contends that the trial court erred by denying him the constitutional right to self-representation in violation of the Sixth Amendment to the United States Constitution [Doc. # 1, at 6]. This claim was squarely rejected by the intermediate court of appeals, which summarized in detail the record of Lewis's repeated efforts to undermine or disrupt the proceedings:

> Appellant was indicted for possession of a controlled substance. The indictment also alleged two prior felony convictions. Prior to trial, appellant filed several motions and affidavits. In these filings, appellant: referred to himself as "Marcus Jamez Lewis©, a living, breathing, flesh-and-blood man under the law of God"; asserted a contract between the prosecutor as "offeror" and himself as the

"offeree"; and described himself as a sovereign citizen "housekeeping" in the Republic of Texas. Appellant also filed a pre-trial writ of habeas corpus in which he cited to several provisions of the Uniform Commercial Code as well as the "Maritime Claims Rule."

Appellant's court-appointed counsel, Ted Doebbler, filed a motion for a psychiatric evaluation to determine whether appellant was competent to stand trial. The trial court granted the motion and appellant was evaluated by a licensed psychologist, who concluded that appellant was competent. The evaluating psychologist reported that appellant had a rational understanding of the charges against him, exhibited appropriate courtroom behavior, and possessed the capacity to adequately participate in legal proceedings with the guidance of legal counsel. The psychologist reported also that appellant exhibited adjustment disorder with anxiety, polysubstance dependence in early partial remission in a controlled environment, and antisocial personality disorder. The psychologist suggested that it would be beneficial for appellant to take the psychoactive medication that he had previously been prescribed but refused to take.

Before the start of trial, appellant informed the trial court that he intended to represent himself. The trial court admonished appellant that it was not in his best interest to proceed *pro se* and began a *Faretta*[3] hearing. At the outset, appellant asked the trial court to address him as "Paramount Security Interest Holder and Properties Collateral Belonging to the Defendant." The trial court denied the initial request, and continued to do so each time that appellant asked. In his responses to the court's questioning, appellant appeared to be feigning misunderstanding. The following exchange is illustrative:

> THE COURT: So how far did you get in school, Mr. Lewis?
>
> DEFENDANT: In what school?

---

[3] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975).

THE COURT: What school do you think I'm talking about, sir? You don't have any idea?

DEFENDANT: No, sir.

. . .

THE COURT: So what part of school is not clear to you.

DEFENDANT: I've been to several schools.

THE COURT: How far did you go in school? Tenth grade, college, pick a number.

DEFENDANT: College.

The trial court asked appellant if he understood the ramifications of representing himself, to which appellant responded that he was representing himself as the "Paramount Security Interest Holder of All Property Collateral Belonging to the Defendant" and therefore was the agent for Marcus Jamez Lewis. The trial court then said that appellant could not represent himself because he did not understand "the issues." However, the hearing continued. The trial court asked appellant several more times if he understood that he would be held to the same standard as an attorney and appellant indicated that he did. The trial court asked appellant if he understood the range of punishment he was facing. Appellant indicated that he did. The trial court then warned appellant that he would not be able to present any of his pre-trial Uniform Commercial Code arguments as part of his defense. Appellant again feigned ignorance as the trial court admonished him:

THE COURT: I'm telling you up front, Mr. Lewis, none of this UCC stuff is getting in front of this jury. It has nothing to do with this case. Do you understand that, sir?

DEFENDANT: Do I understand what?

THE COURT: What part of that last sentence was not clear to you, sir?

DEFENDANT: You said —

THE COURT: None of that UCC stuff.

DEFENDANT: You keep referring to that UCC stuff I don't —

THE COURT: Well, you filed stacks of motions quoting UCC. I'm reading your file right here. Are those your motions, sir?

DEFENDANT: Yes.

THE COURT: That stuff you've been writing down for the last few months, that's what I'm talking about.

DEFENDANT: Can you be specific because I wrote so much.

THE COURT: I know you have. None of this UCC stuff is getting in front of this jury.

DEFENDANT: What about my three-step administration process that I tried to handle with the district attorney who I don't even know where she is.

THE COURT: Standing right beside you, [five] feet away.

DEFENDANT: Where? She didn't identify herself.

The trial court asked again whether appellant waived his right to effective legal counsel. Appellant said that he did. The trial court asked appellant for a final time whether he knew what he was charged with, to which appellant responded, "No, what are the charges?" The

trial court again read appellant the charges and asked if he understood them. Appellant responded that he did not. The trial court then denied appellant's request to represent himself, saying that he "showed a lack of understanding of what he [was] charged with and [the] procedures of the court." In a signed order denying appellant's motion to waive counsel, the trial court wrote that appellant was "confrontational, obstructive, and [chose] to assert issues not relevant to this case" and that he possessed "no understanding of [the] rules of evidence [or] relevancy." The trial court also made reference to appellant's insistence on being referred to as "Paramount Securities Interest Holder" and his assertion that he was a sovereign citizen.

Following the court's order, Ted Doebbler remained as trial counsel. The trial court informed appellant that he could remain in the courtroom as long as he was not obstructive or else he would have to sit in a holding cell outside the courtroom. Appellant again responded that the court was referring to him by an incorrect name and insisted that he be referred to as "Marcus" or "Paramount Security Interest Holder." Appellant reiterated that he did not consent to Doebbler as his attorney. Appellant also continued to raise bizarre questions:

> THE COURT: So again, Mr. Lewis, you are welcome to join us for your trial. You can sit here quietly and assist your counsel, or you can sit back and listen to it. Which one do you choose?

> DEFENDANT: I have [an] issue with subject matter jurisdiction.

> THE COURT: We're back to UCC stuff.

> DEFENDANT: And you said your name is Judge, right?

> THE COURT: That's right.

> DEFENDANT: Is that in your physical capacity or primatial capacity?

The trial court concluded that appellant should be put in a holding cell at the start of trial. After asking appellant if he would like to return to the courtroom, appellant refused to come out or to wear the street clothes that Doebbler provided for him. Shortly after, appellant changed his mind and appeared in the courtroom. The trial court commenced voir dire. Appellant interjected several times during voir dire to tell the trial court that he did not consent to Doebbler as his attorney. The trial court warned appellant to stop disrupting the proceeding or else he would be removed from the courtroom. Appellant told the trial court he did not want to be "part of this process," at which time the court ordered him to be removed for the rest of voir dire.

The next day, appellant refused to leave his cell for four-and-a-half hours before finally being forcibly removed and brought to court. When the trial court asked appellant to enter his plea, appellant responded that there was an issue of subject matter jurisdiction and again stated that he did not consent to being represented by Doebbler. The trial court again warned appellant not to obstruct the proceedings or talk out of turn:

> THE COURT: ... you can only stay here if you do not obstruct the proceedings by speaking out of turn, speaking over the Court, interjecting yourself into trial; or if you will not agree to that, I will place you back into the holding tank, a secured area . . . So Mr. Lewis, it's up to you. Do you want to stay in the courtroom and observe the process, or listen to it in the back holding cell, as you see fit, sir?

> DEFENDANT: For the record, I am the Paramount Security Interest Holder for all property collateral belonging to the defendant, Marcus Jamez Lewis. Once again, I do not consent to have Ted Doebbler represent the defendant. I wish to proceed in this manner in my proper persona. I do not consent for trial.

> THE COURT: So Mr. Lewis, I'm still stuck with that issue. You're welcomed and encouraged to stay here and observe and assist Mr. Doebbler during the course of

the trial, if you do so without obstructing the orderly process of the Court. If I can't get your word on doing that, you'll have to listen to the trial in a secure holding area. Which do you prefer to do, sir?

DEFENDANT: Judge, are you violating my 5th and 6th Amendment right?

THE COURT: I presume you're not going to answer that question. I'm placing Mr. Lewis in a secure area . . .

After another exchange in which appellant requested to inspect the original indictment, appellant asked if there was anyone in the courtroom who had a claim against him. The trial court ordered appellant to be removed.

The trial proceeded with the parties' statements and witness testimony. During the trial, appellant began screaming from the holding cell that he did not consent. The trial court warned appellant that he should stop or else he would be removed to a room further away from the courtroom. Appellant continued yelling, at which time the trial court ordered him to be removed to a holding cell in another part of the courthouse. The trial court took periodic breaks to allow Doebbler to visit appellant and confer with him; appellant refused to speak with Doebbler or return to the courtroom for the remainder of trial.

*Lewis v. State*, 532 S.W.3d 423, 426-29 (Tex. App. – Houston [14th Dist.] 2016, pet. ref'd) (footnote in original).

The court of appeals acknowledged that in *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court recognized a criminal defendant's right to conduct his own defense. *See Lewis*, 532 S.W.3d at 429-30. Based on the record of Lewis's obstreperous behavior, the court of appeals held that the trial court did not

abuse its discretion by denying his request to represent himself in view of the record of Lewis's disruptive behavior:

> We review the denial of a defendant's request for self-representation for abuse of discretion. *Alford v. State*, 367 S.W.3d 855, 861 (Tex. App. — Houston [14th Dist.] 2012, pet. ref'd). Improper denial of the right to self-representation is a structural error that requires reversal and is not subject to harmless error review. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 149, 126 S. Ct. 2557, 165 L.Ed.2d 409 (2006) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177-78 n. 8, 104 S. Ct. 944, 79 L.Ed.2d 122 (1984)).

> In 1975, the Supreme Court recognized a criminal defendant's constitutional right to conduct his own defense. *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975). Not only does the Sixth Amendment guarantee a criminal defendant the right to effective assistance of counsel, it also ensures the defendant's right "personally to decide whether in his particular case counsel is to his advantage." *Id*. at 834, 95 S. Ct. 2525. "Although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Id.*

> While the courts must undoubtedly respect a defendant's knowing and intelligent choice to represent himself, the defendant's self-representation must likewise respect the "dignity of the courtroom." *Id*. at 834 n. 46, 95 S. Ct. 2525. "The government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162, 120 S. Ct. 684, 145 L.Ed.2d 597 (2000) (declining to extend *Faretta* to appellate proceedings). Therefore, trial courts are afforded the discretion to deny self-representation by a defendant who "deliberately engages in serious and obstructionist misconduct" or "abuse[s] the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n. 46, 95 S. Ct. 2525. Because the trial court's decision to deny self-representation based on deliberately obstructive behavior turns on an evaluation of credibility and demeanor, we afford almost total

deference to that decision. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010).

Here, the trial court denied appellant's request to represent himself after observing appellant's confrontational and obstructive behavior. Appellant urges a reading of the record that shows appellant as cooperative and responsive to all of the trial court's questions. Although appellant spoke when spoken to, he was hardly cooperative. In nearly every exchange, appellant insisted that the Court was addressing the wrong person. Instead of being addressed as "Mr. Lewis," appellant wanted to be addressed by the cumbersome and nonsensical appellation "Paramount Security Interest Holder in All Collateral Properties Belonging to Defendant Marcus Jamez Lewis." The trial court read appellant the charges against him several times, but appellant insisted that he did not know what he was being charged with, although he did tell the trial court that he understood the range of punishment he was facing. Appellant also continued raising subject matter jurisdiction and similarly inapplicable and unrelated contractual arguments that he made in his pre-trial filings. Midway through the *Faretta* hearing, appellant asked the trial court to identify himself saying, "I don't even know who you are," a remark that seems less like a request for clarification than a show of defiance. Later, appellant asked the trial court if "Judge" was his name in his physical capacity or in his "primatial" capacity. When the court responded that "Judge" was his name in his physical capacity, appellant asked "who and what" he was the judge of. As the proceeding moved forward with Doebbler as appellant's attorney, appellant tried, time after time, to obstruct the proceeding by informing the court — often in loud and disruptive outbursts — that he did not consent to moving forward with trial with his appointed attorney.

The record in this case indicates that appellant is one of a loosely-formed group of citizens who believe that they are sovereign individuals, beyond the reach of any criminal court. These so-called "sovereign citizens" share a common vernacular and courtroom strategy. Courts across the country have encountered their particular brand of obstinacy — not consenting to trial, arguing over the proper format and meaning of their names, raising nonsensical challenges to subject matter jurisdiction, making irrelevant references to the Uniform Commercial Code, and referring to themselves as trustees or

security interest holders.[4] These calculated obstructions and delay tactics pose a unique challenge for trial courts considering *Faretta* motions. When a defendant asserts irrelevant or nonsensical arguments, it becomes difficult to discern whether he lacks a complete understanding of the proceedings or whether he is simply attempting to subvert them. *See United States v. Mosley*, 607 F.3d 555, 557-59 (8th Cir. 2010) (upholding a trial judge's decision to deny self-representation based on an observation that the defendant either did not understand the proceedings or was "unwilling to participate in them"). The trial court's own assessment, therefore, is critical in determining whether the defendant actually lacks the mental capacity to conduct his own defense or whether he is utilizing his intact mental capacity to consciously obstruct the proceedings against him. We hold, that in either case, the trial court may deny the defendant's request to represent himself and insist on representation by appointed counsel.[5]

However, even though we rely heavily on the trial court's assessment of an obstreperous defendant when reviewing the court's decision, the court's discretion to deny the right of self-representation is necessarily limited. *Faretta* empowers the courts to preserve the integrity of the trial by denying self-representation to those who

---

[4] *See e.g. United States v. Benabe*, 654 F.3d 753, 761–64 (7th Cir. 2011); *United States v. Mosley*, 607 F.3d 555, 557–58 (8th Cir. 2010); *United States v. Cochran*, Nos. 2:06 CR 114; 2:09 CV 275, 2009 WL 4638836, at *6-8 (N.D. Ind. Nov. 30, 2009); *United States v. Mitchell*, 405 F. Supp. 2d 602, 603–06 (D. Md. 2005); *People v. Miller*, F067409, 2015 WL 4029853, at *7 (Cal. Ct. App. June 26, 2015); *People v. Frazier*, A134256, 2013 WL 3947765, at *2 (Cal. Ct. App. July 30, 2013); *State v. Thigpen*, 2014 WL 265503, at *2-4 (Ohio App. 8 Dist. Jan. 23, 2014).

[5] The discretion of the trial court to deny self-representation based on severe mental illness is well-established. In *Indiana v. Edwards*, the United States Supreme Court concluded that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. 164, 178, 128 S. Ct. 2379, 171 L.Ed.2d 345 (2008). The Texas Court of Criminal Appeals reaffirmed this "mental-illness-related limitation on the scope of the self-representation right" in *Chadwick* by upholding a trial court's decision to deny self-representation by a mentally ill defendant. *Chadwick v. State*, 309 S.W.3d 558, 560-61 (Tex. Crim. App. 2010) (quoting *Edwards*, 554 U.S. at 171, 128 S. Ct. 2379). We do not comment further on the scenarios in *Chadwick* and *Edwards* and confine our holding only to the situation at hand in which the defendant does not show signs of severe mental illness, but nonetheless has forfeited the right to conduct his own defense.

deliberately engage in obstructionist behavior. Allowing a defendant to represent himself will almost certainly result in some disruption or delay in the trial proceedings, but "so long as it is not a calculated obstruction, this delay cannot deprive the accused of the right [of self-representation] once properly asserted." *Birdwell v. State*, 10 S.W.3d 74, 77 (Tex. App. — Houston [14th Dist.] 1999, pet. ref'd) (emphasis added). We address only the instances in which the trial court has observed calculated attempts to disrupt, subvert, or obstruct the trial proceedings. A trial court may not deny the right to self-representation based simply on "predictions of likely recalcitrant behavior" or delay or disruption incidental to self-representation without a legal education.[6] *Scarbrough v. State*, 777 S.W.2d 83, 92, 94 n. 3 (Tex. Crim. App. 1989); *Colon v. State*, 717 S.W.2d 474, 475 (Tex. App. — San Antonio 1986, no pet.) ("To hold that citizens are unduly disruptive merely because they are inexperienced in the practice of law is tantamount to holding that only attorneys enjoy a constitutional right to self-representation.").

On this record, the trial court did not abuse its discretion in determining that appellant's behavior demonstrated an attempt at calculated obstruction and delay, not an earnest attempt to act in his own defense. The delay caused by appellant's questions, interjections about his proper name, and general refusal to give answers responsive to the trial court's questioning were not regular incidents of self-representation. Rather, they were deliberate and calculated disruptions. Here, the trial court did not rely on mere predictions of recalcitrant behavior; it witnessed this behavior firsthand. The court's written order denying appellant's *Faretta* motion characterized appellant as "confrontational and obstructive," not as incompetent or possessing an "uncertain mental capacity," as appellant asserts in his

---

[6] Likewise, as appellant correctly asserts in his brief, a trial court may not deny a defendant the right to self-representation based on his "lack of technical legal knowledge." *Faretta*, 422 U.S. at 835, 95 S. Ct. 2525 (defendant's mastery of the intricacies of the hearsay rule and other state penal provisions not relevant to assessment of knowing exercise of right to self-representation). Even though the trial court noted in its written denial that appellant did not understand the rules of evidence, the record shows ample support for the proposition that the trial court ultimately denied self-representation because of appellant's obstreperous behavior. [This court] nevertheless reiterate[s] that a trial judge may not deny a defendant who knowingly and intelligently asserts his right to self-representation simply because he lacks legal mastery.

brief. We defer to the trial court's assessment of the appellant as willfully obstructive and hold that its subsequent decision to deny appellant his request for self-representation was in line with *Faretta* and not an abuse of discretion. We therefore overrule appellant's first issue.

*Lewis*, 532 S.W.3d at 431-32 (footnotes renumbered in original). Lewis urged his *Faretta* claim further in his petition for discretionary review [Doc. # 13-17, at 2], but the Texas Court of Criminal Appeals summarily refused that petition [Doc. # 13-18, at 1].

Lewis makes no effort to refute the state appellate court's findings of fact, which are entitled to the presumption of correctness on federal habeas corpus review. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982) (holding that "the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact"); *Moody v. Quarterman*, 476 F.3d 260, 268 (5th Cir. 2007) (same) (citations omitted).

Lewis also makes no effort to challenge the validity of the state court's decision, which is consistent with Supreme Court precedent. *See Indiana v. Edwards*, 554 U.S. 164, 171 (2008) (observing that *Faretta* and later cases have made clear that the right of self-representation is not absolute) (citations omitted). As the state court of appeals expressly recognized, the holding in *Faretta* allows a trial court to deny self-representation to a defendant who "deliberately engages in serious and obstructionist misconduct" or otherwise "abuse[s] the dignity of the

courtroom." *Faretta*, 422 U.S. at 834 n. 46; *United States v. Weast*, 811 F.3d 743, 748-49 (5th Cir. 2016) (finding that a defendant's disruptive antics justified the trial court's decision to deny his request for self-representation). Lewis does not demonstrate that the state court's decision is contrary to or an unreasonable application of this precedent. Accordingly, he is not entitled to relief on this issue.

## B.    The Right to Effective Assistance of Counsel at Trial

Lewis's claims of ineffective assistance were rejected on direct appeal and by the state habeas corpus court, which found that Lewis failed to demonstrate that his attorney labored under an actual conflict of interest and that he also failed to show that, but for any deficiency on his counsel's part, the result of the proceeding would have been different [Doc. # 13-33, at 13-18, 19]. As the state habeas corpus court correctly concluded, claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (quoting *Strickland*, 466 U.S.

at 688). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). "To satisfy the prejudice prong, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

Lewis's allegations of ineffective assistance are addressed separately below under the doubly deferential *Strickland* standard that applies on federal habeas review. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

### 1. Conflict of Interest

Lewis contends that his attorney was deficient because he had a conflict of interest [Doc. # 1, at 6]. In support of his claim that a conflict of interest tainted his defense, Lewis contends that he and his counsel had a difference of opinion with respect to unspecified "material, factual, and legal issues," and that counsel disagreed about "the course of action" that Lewis would have preferred to take with regard to his defense [Doc. # 2, at 5]. Noting that Lewis's defense counsel

expressly denied having any conflict of interest, the state habeas corpus court rejected this claim because Lewis did not identify a "specific conflict of interest" or support his claim with any facts [Doc. # 13-33, at 15].

The right to counsel includes the right to an attorney who is not "burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. An "actual conflict" exists "when defense counsel places himself in a position conducive to divided loyalties." *United States v. Moore*, 37 F.3d 169, 174 (5th Cir. 1994) (citing *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985); *Beets v. Scott*, 65 F.3d 1258, 1268 (5th Cir. 1995) (en banc) (noting that "not every potential conflict, even in multiple representation cases, is an 'actual' one for Sixth Amendment purposes"). Prejudice is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)); *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (same); *Nealy v. Cabana*, 782 F.2d 1362, 1364-65 (5th Cir. 1986) (holding that "proof of some adverse effect is required before prejudice will be presumed from a showing that the attorney had an actual conflict of interest")

The state habeas corpus court rejected this claim after finding that defense counsel's affidavit was "credible" and that counsel did not have a conflict of interest with Lewis [Doc. # 13-33, at 15]. Credibility findings, such as those made

by the state habeas corpus court with respect to defense counsel's affidavit, are entitled to substantial deference on federal habeas review. *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006) (citing *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005)); *see also Kinsel v. Cain*, 647 F.3d 265, 270 (5th Cir. 2011) (recognizing that a state court's credibility determinations "are entitled to a strong presumption of correctness" under the AEDPA) (citation omitted).

Lewis makes no effort to refute the state court's fact findings or credibility determinations, which are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). Likewise, Lewis does not show that his attorney represented a co-defendant or other client with opposing interests and he does not otherwise demonstrate that there was any actual conflict that hampered his attorney's performance. Instead, the conflict that Lewis describes reflects that he and his counsel had a difference of opinion about his defense. "Mere disagreement about strategic litigation decisions is not a conflict of interest." *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007); *Griffith v. Byrd*, 2016 WL 429960, at *8 (S.D. Miss. June 29, 2016) ("A personality conflict or a defendant's mere disagreement with his attorney's strategy does not give rise to a conflict.") (citations omitted). Under these circumstances, Lewis fails to demonstrate that the state court's conclusion was unreasonable. *See, e.g., Vega v. Johnson*, 149 F.3d 354, 361 (5th Cir. 1998) ("[N]either this court nor the Supreme Court has held that a defendant

may force his attorney to present a defense with which the attorney does not agree or acquire new court-appointed counsel until he finds an attorney who agrees with him.").  Accordingly, Lewis is not entitled to relief on this claim.

### 2. Failure to Investigate or Interview Potential Witnesses

In two related claims, Lewis contends that his attorney was deficient because he failed to conduct an adequate pretrial investigation [Doc. # 1, at 7] because the extent of his defense counsel's investigation was limited to reviewing the offense and lab reports [Doc. # 2, at 6].  Lewis argues further that his attorney's investigation was deficient because he failed to interview a potential witness named Israel Adonis, who might have given mitigating evidence [Doc # 2, at 6].

Lewis provides no information about what, if any, mitigating evidence his counsel might have failed to uncover.  At the state court level, Lewis faulted his attorney for failing to investigate whether Lewis's vehicle had tinted windows that would have affected whether the police officers who stopped him could see inside on the day of the offense.   Defense counsel refuted this contention in his affidavit to the state habeas corpus court, explaining that he investigated the case by reviewing the offense report, the lab results for the controlled substance found in Lewis's possession, and Lewis's vehicle [Doc. # 13-32, at 51].  Counsel observed that Lewis's vehicle had tinted windows, but that the tinting did not limit visibility

inside the vehicle [*Id*.]. Counsel stated further that Lewis refused to cooperate during his investigation or inform him of any potential witnesses [*Id*].

Based on defense counsel's credible affidavit, the state habeas corpus court found that defense counsel was unable to locate witnesses due to Lewis's lack of cooperation [Doc. # 13-33, at 17]. The state habeas corpus court found that counsel "conducted an adequate investigation into [Lewis's] case" and that Lewis failed to demonstrate prejudice by showing what further investigation or witness interviews would have revealed [Doc. # 13-33, at 14, 17].

Lewis does not refute the state habeas corpus court's findings or provide any facts in support of his claim that counsel's investigation was inadequate. A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Because Lewis does not demonstrate what additional investigation would have disclosed, his conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory

allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).

Lewis's claim that defense counsel failed to interview witnesses is likewise unsupported by any statement or description about what testimony, if any, a particular witness would have given if he or she had been interviewed. Complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would have testified are largely speculative." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Lewis, who provides no details about what any other witness might have said or how it would have made a difference, falls far short of meeting that burden here. Absent affidavits (or similar matter) from a particular uncalled witness, Lewis's claim is entirely speculative and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). As a result, Lewis fails to show that the state court's decision

to deny relief was unjustified. Accordingly, Lewis is not entitled to relief on these claims.

### 3.    Failure to File a Motion to Suppress

Lewis contends that his attorney was deficient because he failed to file a motion to suppress the evidence seized by police during his arrest, which occurred in the context of a traffic stop after police officers noted that his vehicle did not properly display license plates in compliance with Texas law [Doc. # 1, at 8]. Lewis maintains that defense counsel was deficient because the traffic stop was illegal and that the evidence would have been suppressed if counsel had only filed an appropriate pretrial motion to challenge the validity of the stop [Doc. # 2, at 7].

Lewis's ineffective-assistance claim was rejected by the intermediate court of appeals, which summarized the facts surrounding the arrest as follows:

> On August 15, 2013, Officers K. Solis and J. Diaz observed appellant driving a car with improperly displayed license plates. The officers turned on the lights and sirens on their squad car to indicate to appellant that they intended to pull him over. Appellant began slowing down, but did not stop. After honking at appellant and using their P.A. system to instruct him to pull over, appellant finally pulled into a parking lot and came to a stop.

> Officer Solis approached the passenger side of the car, where he observed a small object that appeared to be a rock of crack cocaine on the passenger's thigh. Officer Solis asked the passenger to step out of the car, at which time he admitted that he was in possession of crack cocaine. Officer Diaz then asked appellant to step out of the vehicle and asked appellant for identification. Appellant refused to present Officer Diaz with identification or step out of the vehicle and began yelling and questioning the officers. Officer Solis drew his Taser gun

and ordered appellant to step out of the vehicle. Appellant complied and allowed himself to be handcuffed. Once appellant and his passenger had both exited the car, the officers performed a search of the interior of the vehicle. Officer Diaz searched the panel located on the inside of the driver's side door and found a box of cigarettes. Officer Diaz opened the cigarette box and found several small bags containing white powder. A field test indicated that the powder was cocaine. Officer Solis also found a firearm hidden inside of a compact disc case in the back seat.

Lewis, 532 S.W.3d at 426. The intermediate court of appeals further concluded that Lewis failed to demonstrate that his counsel was ineffective for failing to file a motion to suppress because Lewis failed to show that the traffic stop was invalid:

Appellant's ineffectiveness claim rests on his incorrect assertion that improper display of license plates was not, on the day that he was pulled over, a criminal offense that could support a legal arrest. "An officer may stop and detain a person if the officer has reasonable suspicion that a traffic violation was in progress or ha[s] been committed." *Kelly v. State*, 331 S.W.3d 541, 549 (Tex. App. — Houston [14th Dist.] 2011, pet. ref'd). On the day that appellant was pulled over by Officers Solis and Diaz, section 504.943(a)(2) of the Texas Transportation Code provided that "a person commits an offense if the person operates on a public highway, during a registration period, a motor vehicle that does not display two license plates that comply with department rules regarding the placement of license plates." Act of June 17, 2011, 82nd Leg. R.S., ch. 1296, § 221, 2011 Tex. Gen. Laws 1296 (amended 2013) (current version at Tex. Transp. Code Ann. § 504.943(a)(2) (West 2013)). In August 2013, the statute had no penalty provision corresponding specifically to it.[7] Appellant argues that the lack of penalty provision in section 504.943 at the time of the stop means that the violation of the statute was not one for which he could be lawfully stopped and detained. However,

---

[7] The current version of the statute went into effect on September 1, 2013 and now contains a specific penalty provision making a violation of the provision a misdemeanor punishable by a fine not to exceed $200. Tex. Transp. Code Ann. § 504.943(e) (West 2011 & Supp. 2015).

this argument overlooks another section of the statute — section 504.948(a), effective June 14, 2013 — that provided a default penalty for any violation of section 504 for which "no other penalty is prescribed." Tex. Transp. Code Ann. § 504.948(a) (West 2011). Subsection (b) makes a violation of any provision contained in the subchapter containing section 504.943 a misdemeanor punishable by a fine. *Id*. § 504.948(b). The existence of this provision undermines appellant's entire theory regarding the motion to suppress that he believes that Doebbler should have filed. Appellant's *Strickland* argument therefore relies on a mistake of law and, as a result, is incorrect.

*Lewis*, 532 S.W.3d at 433-34 (footnote in original). Lewis repeated this ineffective-assistance claim in his state habeas application, but the state habeas corpus court declined to reconsider it in view of the appellate court's decision [Doc. # 13-33, at 13-14].

Lewis does not challenge any of the state appellate court's factual findings or legal conclusions about the traffic stop. To the extent that the state court of appeals held that the arrest was permissible under state law, "a federal habeas corpus court may not conclude otherwise." *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2010) (citations omitted). In that regard, it is not the function of a federal habeas corpus court to review a state's interpretation of its own law, particularly where a state statute or rule is concerned. *See Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (citing *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) and *Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985)).

Lewis does not otherwise show that his attorney had another valid argument to make regarding the validity of the traffic stop. This is fatal to his claim. An attorney's failure to file a motion to suppress or to adequately litigate a Fourth Amendment claim may constitute deficient performance only if the evidence would have been suppressed as a result of the motion. *See Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005). The petitioner bears the burden of proving that the evidence admitted at his trial would have been suppressed as a result of an adequate motion or objection by his counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Lewis does not propose any other objection or legal theory that his defense attorney could have raised that would have been successful. Accordingly, he does not demonstrate that his counsel was deficient for failing to file a motion to suppress or that the state court's decision to deny relief was unreasonable. Therefore, he is not entitled to relief on this issue.

### 4.    Failure to Object to the Indictment

Finally, Lewis contends that his attorney was deficient because he failed to object to a defect in the indictment [Doc. # 1, at 8]. In particular, Lewis contends that his attorney should have objected to an "improper sequence" of prior convictions listed in the enhancement paragraphs that were alleged in the indictment for purposes of increasing his potential range of imprisonment under the Texas habitual offender statute [Doc. # 2, at 9].

This claim was rejected on state habeas corpus review, where the reviewing court summarized the evidence presented during the punishment proceedings and found that the State "presented sufficient evidence to prove the proper sequence of the applicant's prior felony convictions" for the purpose of enhancement [Doc. # 13-33, at 16]. The state habeas corpus court found in the alternative that even "assuming *arguendo*" that defense counsel failed to object to the improperly pleaded sequence, Lewis still was not entitled to relief because he failed to show actual prejudice or harm as a result of his counsel's performance [*Id.*]

The record supports the state habeas corpus court's findings and conclusions. The Texas habitual offender statute provides for an increase in punishment where the State presents proof showing that a defendant had at least two prior felony convictions in a particular sequence or chronological order:

> [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, *and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final*, on conviction the defendant shall be punished by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years.

Tex. Penal Code § 12.42(d) (emphasis added). The enhancement paragraphs in the indictment alleged that Lewis incurred the following prior felony convictions before committing the primary offense, as follows:

> Before the commission of the offense alleged above, (hereafter styled the primary offense), on November 14, 2005, in Cause Number

0997533, in the 209th District Court of Harris County, Texas, the Defendant was convicted of the felony of possession of a controlled substance.

Before the commission of the primary offense, and after the conviction in Cause Number 0997533 was final, the Defendant committed the felony of possession of a prohibited weapon and was finally convicted of that offense on December 2, 1998, in Cause Number 0795682, in the 185th District Court of Harris County, Texas.

*Indictment*, Doc. # 13-19, at 13 (emphasis eliminated). Lewis correctly notes that the offense listed in paragraph two occurred before the offense listed in enhancement paragraph one, resulting a sequence that is out of chronological order. Lewis does not, however, demonstrate that he was harmed as a result of the improperly pled sequence.

Where two prior convictions are alleged in an indictment for purposes of enhancing a sentence under the Texas habitual offender statute, the State bears the burden of proving beyond a reasonable doubt that a defendant's second previous felony conviction was committed after the defendant's first previous felony conviction became final. *See Jordan v State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008). Although the sequence alleged in Lewis's indictment is out of chronological order, the State presented evidence in the form of a certified copy of Lewis's penitentiary packet of prior offenses, establishing that the felony conviction entered against him in 1998 (Cause No. 0769232), which resulted in a two-year prison sentence, became final well before he was convicted of a

subsequent felony in 2005 (Cause No. 0997533), which resulted in a five-year prison sentence [Doc. # 13-23, at 50-51]. The Texas Court of Criminal Appeals has held that even when enhancement paragraphs are pled in the wrong sequential order, the State will still meet its burden of proof if the record evidence reflected that those convictions occurred in the required sequential order. *See Roberson v. State*, 420 S.W.3d 832, 840 (Tex. Crim. App. 2013).

Lewis does not dispute that the State presented sufficient proof in support of the enhancement allegations during the punishment phase of the proceeding, showing that he had at least two qualifying prior felony convictions in sequential order for purposes of the enhancement found in Tex. Penal Code § 12.42(d). Based on this record, Lewis does not show that his sentence was improperly enhanced or that his counsel had a valid objection to make. Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice. *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

Because Lewis does not establish that the state court's decision to deny relief was contrary to or an unreasonable application of clearly established precedent, he fails to demonstrate that he is entitled to relief. Absent a valid claim, the respondent is entitled to summary judgment and the petition must be denied.

## IV.  **CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the

Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong.  Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.      CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment [Doc. # 12] is **GRANTED**.

2. The petition for a writ of habeas corpus filed by Marcus Jamez Lewis under 28 U.S.C. § 2254 is **DENIED** and this case is **DISMISSED with prejudice**.

3. A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on January 25, 2019.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE